**Petition for Naturalization of Grete W——.**

**No. 205255.**

United States District Court
E. D. Pennsylvania.

Sept. 2, 1958.

---

George Gershenfeld, Philadelphia, Pa., for petitioner.

Eugene E. Cole, William J. Cochrane, Philadelphia, Pa., for Immigration & Naturalization Service.

VAN DUSEN, District Judge.

Petitioner, a 48-year old widow, entered the United States with her daughter Anna (born May 20, 1948) for permanent residence on October 13, 1949. She has lived in Philadelphia since December 1949 and claims to have moved to her present residence in 1951 or 1952.[1]

She shares a first floor apartment at 1701 North 61st Street with her daughter and Herbert S. Cohen. She alleges that she and her daughter use lavatory facilities in the basement, but admits that they have to go through Mr. Cohen's bedroom to get to the kitchen which they use.[2] The records of the office of the Philadelphia Recorder of Deeds disclose that this property (1701 North 61st Street) was conveyed to Herbert S. Cohen and Grete Cohen, his wife, on December 20, 1950.[3] Petitioner does not deny that she is the Grete Cohen mentioned in the deed, but states she paid $1,000, toward the purchase of this property (R–27 of Exhibit G–2) and pays her co-owner $35 a month rent.[4] Petitioner testified that the sole source of income for her daughter and herself is from the door-to-door sale of sheets and pillowcases, resulting in receipts of $20 to $30 per week (R–26 of G–2). Petitioner denies having any marital relations of any kind with Mr. Cohen and he gave similar testimony.[5]

During the first stenographically reported hearing on preliminary examination (see 8 U.S.C.A. § 1446(b)) held February 23, 1956, a neighborhood report, dated November 30, 1955, and prepared in accordance with the following direction of Congress in Section 335(a) (8 U.S.C.A. § 1446(a)) of the Immigration and Nationality Act of 1952, was marked Exhibit B, shown to petitioner, and read to her (see p. 4 of Exhibit G–1):

"At any time prior to the holding of the final hearing on a petition for naturalization provided for by

---

1. See page 1 of Exhibit D to February 23, 1956, hearing transcript, which is Exhibit G–1.

2. See floor plan of apartment drawn by petitioner (Exhibit C–1).

3. See Exhibit B to transcript of hearing of 2/3/56 (page 3), which transcript is Exhibit G–1.

4. The consideration recited in the deed of 12/20/50 is $9,000. See Deed Book C.J.P. No. 2845, pp. 48–50.

5. Mr. Cohen's explanation of placing the property in the name of petitioner and himself was the desire to be sure that the daughter, Anna, received the property if he should die. Since the property could easily have been put in the joint tenancy of him and a guardian for Anna, this testimony is difficult to understand (see page 13 of Exhibit G–1, transcript of 2/23/56 hearing).

section 1447(a) of this title, an employee of the Service, or of the United States designated by the Attorney General, *shall* conduct a personal investigation of the person petitioning for naturalization in the vicinity or vicinities in which such person has maintained his actual place of abode and in the vicinity or vicinities in which such person has been employed or has engaged in business or work for at least five years immediately preceding the filing of his petition for naturalization." (Emphasis supplied.)

At the second stenographically reported hearing on preliminary examination held December 30, 1957, at which petitioner was represented by counsel, the investigator of the Immigration and Naturalization Service who made the above-mentioned report, was sworn and made available for cross-examination to petitioner and her counsel (R–14 to 16 of Exhibit G–2). He also testified that when he addressed the petitioner as she was sweeping the sidewalk in front of premises 1701 North 61st Street on October 7, 1955, and addressed her as Mrs. Cohen, she "acknowledged the address and said yes," (R–15). His testimony continued as follows (R–15):

"Q. You mean you asked her if she was Mrs. Cohen? A. Yes, I did, yes.

"Q. Did she at that time state her name was W——, as far as you can remember? A. Not immediately. When I identified myself as an investigator with the Immigration Service, then she replied that her name was not Cohen but W——."

The report, marked Exhibit B, listed five neighbors interviewed by the investigator[6] and stated that all but one of these individuals, who knew nothing of petitioner's marital status, "referred to her as a married woman and knew her as Mrs. Cohen." However, these four neighbors were called as witnesses by the Immigration and Naturalization Service on December 30, 1957, and admitted they had no knowledge of her marital status.[7] The report also contained these sentences (page 2 of Exhibit B to G–2):

"In addition, inquiry was made at Gallagher's Real Estate Co., 5931 North 61st. Street, Philadelphia, Pennsylvania, which company handles real estate matters for Mr. Cohen. Personnel of that firm also described the subject as a married woman, the wife of Mr. Cohen."

[redacted] Petitioner's objections to receipt of this report in evidence are overruled. It has been consistently held that facts found in reports prepared by public officials in the course of their duty, in accordance with express statutory authority, are admissible as an exception to the hearsay rule where there is no motive for the official to be partial. See Wigmore on Evidence (3d Ed. 1940), §§ 1670 and 1672;[8] Moran v. Pittsburgh-Des Moines Steel Co., 3 Cir., 1950, 183

6. In addition to the interviews conducted with petitioner and Mr. Cohen.

7. Mr. Corcoran called her "Mrs. Cohen," but could not remember hearing anyone else call her by that name (R–3 of Exhibit G–2). Mr. Gilligan surmised that the old gentleman in the house was her husband, but did know her name or marital status (R–10). Mrs. Gray (a next-door neighbor) testified she knew petitioner as Mrs. W—— (R–11) and did not even know a man lived at 1701 North 61st Street (R–13 and R–14). Mrs. Bradley had seen Mr. Cohen and Mrs. W—— together at his store (which Mrs. Bradley rented to Mr. Cohen in her house) where "she used to come * * (and) visit * * * " but Mrs. Bradley did not know whether petitioner was "his wife or if she was just a friend."

8. It is noted that Wigmore makes this statement at page 699 (Vol. V):

"There has thus arisen increasingly a need for the more liberal recognition of an authority such as would make admissible various sorts of reports dealing with matters seldom disputable and only provable otherwise at disproportionate inconvenience and cost."

F.2d 467, 472–473; [9] cf. United States v. Northwest Airlines, D.C.D.Minn.1946, 69 F.Supp. 482, 487. This report stated that petitioner was known in the community as Mrs. Cohen, the wife of Herbert S. Cohen, that the house stood on the deed records in the name of petitioner and Mr. Cohen as husband and wife, that Mr. Cohen had been married to some other woman since prior to 1950, and that petitioner had a good understanding of spoken English.[10] The report did not say that either petitioner or Mr. Cohen represented that she was Mrs. Cohen, except in the deed to the house. As long as the report is confined to statements on the subject matter of the requirements for naturalization (see 8 U.S.C.A. § 1427), it is admissible in evidence.[11]

■ The report should be made available to the petitioner,[12] as it was in this case, and the petitioner can secure subpoenas [13] in order to produce witnesses to attack the weight to be given to it. Also, a petitioner is entitled to a trial de novo before the District Court,[14] at which time the weight to be given to the report can be attacked by a petitioner through the production of witnesses. Such procedure is not unconstitutional in view of the well-recognized principle that the acquisition of citizenship through naturalization is a privilege granted by Congress and not a right. United States v. Manzi, 1928, 276 U.S. 463, 467, 48 S.Ct. 328, 72 L.Ed. 654; Schneiderman v. United States, 1943, 320 U.S. 118, 131, 63 S.Ct. 1333, 87 L. Ed. 1796; cf. United States v. Montal-

9. In this case, the court held such a report was admissible as a business record under 28 U.S.C.A. § 1732, and stated that the hearsay character of the report was solely an argument for the factfinder concerning its weight.

10. On the face page of the report, the following is stated: "The subject appears to be living with one Herbert S. Cohen in an illicit relationship since she is known as his wife." This is neither a finding nor a conclusion but an appearance or suspicion, as indicated by use of the word "appears."

11. The authorities mentioned above establish that the official duty to prepare the report is the basis for this exception to the hearsay rule. See §§ 1633 and 1635 of Wigmore (3d Ed. 1940), as well as the sections cited above. In § 1635, Wigmore says at page 531 (Vol. 5):

"Now there may be cases in which the officer's duty clearly does involve his ascertainment of facts occurring out of his presence and requiring his resort to sources of information other than his own senses of observation; for example, an assessor's record of the value of real estate and of its occupancy, or a registrar of voters' record of electors' residences. When such a duty clearly exists, the general doctrine above, that a witness should have personal knowledge, need not stand in the way, for (as already noted) it has its conceded limitations; and where the officer is vested with a duty to ascertain for himself by proper investigation, this duty should be sufficient to override the general principle.

It is true that due caution should be observed before reaching the conclusion that the law has in fact in a given case intended to invest the officer with such an unusual duty. But when it clearly appears that a duty has been prescribed to investigate and to record or certify facts ascertained other than by personal observation, then it follows that, in accordance with the general principle of the present exception, the statement thus made becomes admissible."

Since this report would be admissible in judicial proceedings under this recognized exception to the hearsay rule or as a business record, this sentence of 8 C.F.R. 335.12, relied on by petitioner, is no basis for excluding the report:

"No evidence dehors the record or evidence that would not be admissible in judicial procedure under recognized rules of evidence shall be considered in the preparation of the memorandum."

12. On this record, it is not necessary to consider the circumstances when withholding the report from the petitioner may be justified. Cf. Jay v. Boyd, 1956, 351 U.S. 345, 357–361, 76 S.Ct. 919, 100 L.Ed. 1242.

13. See 8 C.F.R. 335.11(e).

14. 8 U.S.C.A. § 1447(b) provides:
"* * * the court * * * shall, upon demand of the petitioner, require the examination of the petitioner and the witnesses under oath before the court and the presence of the court."
See Application of Murra, 7 Cir., 1948, 166 F.2d 605.

bano, 3 Cir., 1956, 236 F.2d 757, 760. Congress has provided that the burden is on the petitioner to satisfy the conditions established by it for citizenship. See 8 U.S.C.A. § 1427; United States v. Schwimmer, 1929, 279 U.S. 644, 49 S.Ct. 448, 73 L.Ed. 889; Petition of Markert, D.C.E.D.Pa.1946, 67 F.Supp. 36, 37; cf. Petition of Petcheff, D.C.S.D.N.Y.1953, 114 F.Supp. 764, 765. These authorities make clear that it is not a violation of constitutional guarantees to permit consideration of this report when the petitioner is given full opportunity to attack the weight to be given to it.

The weight to be given to the report in this case is very much weakened by the testimony of the witnesses (see footnote 7). It is noted that petitioner could have cross-examined the investigator as to the identity of the employees of Gallagher's Real Estate Company whom he questioned in order to weaken further the weight to be given to the contents of this report.

██ Without considering that part of the report reciting conversations with others, the record does no more than raise a doubt as to whether petitioner

has met the requirements for citizenship established by Congress in 8 U.S.C.A. § 1427.[15] The deed to petitioner, as the wife of Mr. Cohen, her failure to explain her sources of materials used in making her sheets, her unwillingness to produce proof of her income, and the vagueness of her sponsoring witnesses, are sufficient in themselves to result in the conclusion that she has not met the burden of proving good moral character. To paraphrase the language used in Petition of Petcheff, supra, 114 F.Supp. at page 766, "In any event, upon the entire record such doubt exists on the issue of petitioner's (good moral character, among other conditions of citizenship) as to require denial of [her] application," without prejudice to her right to renew this application at such time as she can produce the requisite proof.[16]

### Conclusions of Law [17]

1. The petitioner has not established that she was a person of "good moral character" for a period of five years immediately preceding the date of the filing of her petition for naturalization within the meaning of those terms as

---

15. The petitioner's vague testimony as to her sources of income and her re͏ͅted claim that she is "sick" make ẗf͏ following language from In re Hoffmann, D.C.S.D.Cal.1936, 13 F.Supp. 907, pertinent:
  "It is uniformly held that the right of citizenship is not an inherent right, but a privilege extended by the sovereign power. It is founded upon reciprocal relations, protection to the subject and allegiance to the sovereign. Allegiance may involve many duties, but it assumes a condition on the part of the subject that will make their rendition possible. It is not conceivable that the sovereign agrees to extend protection with the certainty that the applicant's condition makes impossible the performance of many of them.
  \* \* \* \* \*
  "\* \* \* 'Citizenship is a grave affair, and must be assumed with a conscious dedication of life to the spirit and strength of the nation within the principles of the Constitution, and not be inspired by expected largesse from a state or the nation. Citizens are members of a

community inspired to a common goal, who, in their associated relations, submit themselves to rules of conduct for the promotion of the general welfare and conservation of individual as well as collective rights.'
  \* \* \* \* \*
  "\* \* \* Citizenship \* \* \* should be denied where the petitioner's condition renders full performance of his reciprocal obligation impossible."

16. In Petition of De Leo, D.C.W.D.Pa. 1948, 75 F.Supp. 896, relied on by petitioner, the court stated at page 899:
  "The petitioner called character witnesses, who were persons of good reputation and standing in the community, and who stated that they had known the *petitioner* for a number of years and that he carried a good reputation in the community for morality, and as a peaceable and law-abiding citizen."
  This petitioner did not produce such testimony as to her character.

17. The stipulation of 4/14/58 makes it unnecessary to make detailed Findings of Fact.

used in Section 316(a) of the Immigration and Nationality Act.

2. The petition for naturalization will be denied, without prejudice to petitioner's right to file another petition for naturalization at a later date.