**R. H. COLVIN, Plaintiff-Appellee,**

**v.**

**UNITED STATES of America, Defendant-Appellant.**

**No. 71–1221.**

United States Court of Appeals, Ninth Circuit.

Argued May 25, 1973.

Decided June 8, 1973.

N. Warner Lee, Asst. U. S. Atty. (argued), Richard K. Burke, U. S. Atty., Phoenix, Ariz., for defendant-appellant.

James W. Stewart (argued), Collins, Hays, Stewart, Sanford, Berg & Pott, Inc., San Jose, Cal., J. R. Babbitt, Flagstaff, Ariz., for plaintiff-appellee.

Before ELY, CARTER and TRASK, Circuit Judges.

## OPINION

JAMES M. CARTER, Circuit Judge:

Mary E. Colvin was killed in an auto accident in which the driver was a Government employee. Colvin, the appellee, commenced the action below under the Federal Tort Claims Act, claiming damages for wrongful death as the surviving spouse of Mary E. Colvin; and also brought the action on behalf of Mary Carol Davis, the daughter of Colvin and his wife, and Shirley Ann Eitrein, a daughter of Mrs. Colvin by a former marriage. He recovered a judgment for $50,000.00 against the United States, decreased by $12,000.00 received by Colvin from another tortfeasor, making a net judgment of $38,000.00.

### The Issues

The Government makes various contentions. We consider specifically two of them:

1. Was it error to admit into evidence an accident report and a hearsay statement of an eyewitness contained therein?

2. Was it error to admit testimony of the deceased's earnings based on an unproduced diary? We reverse.

In view of our disposition of the case, we make no detailed statement of the facts.

The accident out of which the death of Mrs. Colvin resulted occurred on May 27, 1965, on Highway 66 each of Flagstaff, Arizona. The deceased was a passenger in a vehicle owned by the United States of America and operated by Frances Eleanor Fairchild, an employee of the United States acting within the scope of her employment.

A delivery truck driven by Cleveland Quain approached the Starvout Trading Post north of old Highway 66. For the purpose of making a delivery, Quain made a left-hand turn across the oncoming traffic lane in which the Government vehicle was traveling. The Government vehicle made 50 feet of skid marks and crashed into the right-hand side of the truck. The posted speed limit was 50 miles per hour.

### I.

### *The Introduction of the Accident Report and the Hearsay Statement*

At trial the plaintiff presented as a witness Edward Boggio, a criminal investigator for the Bureau of Indian Affairs. He was one of a committee who investigated the accident and made a report. He did not have the original of the report but produced a copy. The report consisted of a description of the scene as observed by the committee members, their meeting with the officials of the local sheriff's office, photographs taken from the scene and of the two vehicles involved, together with a signed statement by Kent Tso taken in the presence of the witness. Mr. Tso did not speak English. His statement was therefore taken on tape, carried back to Tuba City and transcribed into English. The statement recited:

"I was standing in front of the Starvout Trading Post on May 27, 1965 at about 12:05 P.M. I saw the big truck approaching from Old Highway 66. He had missed the driveway entrance located south of the store, had slowed down almost to a stop, made a left turn across the right lane into the left lane near the center between the north and south driveways. After he had turned and was almost to the west edge of the highway next to the store, *I noticed a Government car coming from the north at a speed of between 50 and 55 miles per hour.*" [Emphasis added]

The statement was marked as Exhibit 15. The Government objected to it on

the ground that it was hearsay. The objection was overruled and the statement was admitted.

The Government contends that the statement was the sole evidence of negligence on the part of the driver of the Government car. Quain, the truck driver, testified that prior to his left-hand turn he looked ahead and saw no cars approaching. The only other possible eyewitness was Frances E. Fairchild, the Government employee who was driving the car in which Mrs. Colvin was riding. Her signed statement, offered by the appellee Colvin, said she had no recollection of the events at the immediate time of the accident.

The trial court found that the driver of the Government vehicle "was operating defendant's vehicle in a careless and negligent manner in that said operator was traveling at an excessive rate of speed, and in that said operator failed to observe the truck executing a left-hand turn, which in the exercise of ordinary care she should have observed in ample time to avoid the collision."[1]

Rule 43, Federal Rules of Civil Procedure, lays down a three-fold test for admissibility of evidence in the federal courts. The test most favorable to the receipt of the evidence must be used. Thus, state rules cannot be used to exclude evidence if that evidence is admissible under federal law or federal statutes. 5 J. Moore, Federal Practice ¶ 43.04, at 1325–26, 1343 (2d ed. 1971). *Cf.* Potlach Oil & Ref'g Co. v. Ohio Oil Co. (9 Cir. 1952), 199 F.2d 766, 772, cert. denied, 345 U.S. 926, 73 S.Ct. 786, 97 L.Ed. 1357 (1953); Allen v. Matson Navigation Co. (9 Cir. 1958), 255 F.2d 273, 279. The Government cites Arizona case law in support of its contention that Tso's statement was inadmissible. Since we find no Arizona cases *favoring* the admission of the hearsay statement, we look to 28 U.S.C. §§ 1732 (Business Records) and 1733 (Official Records), and federal case law.

The admissibility of an accident report, and particularly a hearsay statement of a bystander, has been a troublesome question for the courts.

The statement of Tso was hearsay. There is no showing in the record that he was anything but a bystander, nor that he had any relationship with either of the parties or was under any duty to report information to the Government investigating committee.

The proposed Rules of Evidence for the United States Courts and Magistrates (hereafter, *Rules of Evidence*) now pending before the Congress are not controlling. However, proposed Rule 803, §§ (6) and (8),[2] and the commen-

---

1. Since the district court relied on two grounds, and since we conclude that the evidence of the speed of the Government car was improperly admitted, we do not consider the evidence concerning the second ground in the trial court's finding. We seriously question whether the latter ground of negligence is sufficiently shown in the record. In any event, we are unable to determine what effect the evidence of excessive speed had on the court's decision.

2. Rule 803 provides:
   "HEARSAY EXCEPTIONS: AVAILABILITY OF DECLARANT IMMATERIAL
   The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
   .      .      .      .      .

(6) *Records of regularly conducted activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions or diagnoses, made at or near the time by, or from information *transmitted by, a person with knowledge, all in the course of a regularly conducted activity,* as shown by the testimony of the custodian or other qualified witness, *unless the sources of information or other circumstances indicate lack of trustworthiness.* (Emphasis added)
   .      .      .      .

(8) *Public records and reports.* Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law, or *(C) in civil cases* and

tary in the notes of the Advisory Committee [3] are helpful.

There is an overlap in the matters discussed in the Note of the Advisory Com-

against the government in criminal cases, *factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.*" (Emphasis added)

3. Attached to the proposed Rules is the Advisory Committee's Note. Under *Exception (6)* appears the following:

"Amplification of the kinds of activities producing admissible records has given rise to problems which conventional business records by their nature avoid. They are problems of the source of the recorded information, of entries in opinion form, of motivation, and of involvement as participant in the matters recorded.

Sources of information presented no substantial problem with ordinary business records. All participants, including the observer or participant furnishing the information to be recorded, were acting routinely, under a duty of accuracy, with employer reliance on the result, or in short 'in the regular course of business.' If, however, the supplier of the information does not act in the regular course, an essential link is broken; the assurance of accuracy does not extend to the information itself, and the fact that it may be recorded with scrupulous accuracy is of no avail. *An illustration is the police report incorporating information obtained from a bystander:* the officer qualifies as acting in the regular course but the informant does not. *The leading case,* Johnson v. Lutz, 253 N.Y. 124, 170 N.E. 517 (1930), *held that a report thus prepared was inadmissible.* Most of the authorities have agreed with the decision. Gencarella v. Fyfe, 171 F.2d 419 (1st Cir. 1948); Gordon v. Robinson, 210 F.2d 192 (3d Cir. 1954); Standard Oil Co. of California v. Moore, 251 F.2d 188, 214 (9th Cir. 1957), cert. denied 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148; Yates v. Bair Transport, Inc., 249 F.Supp. 681 (S.D.N.Y.1965); Annot., 69 A.L.R.2d 1148. Cf. Hawkins v. Gorea Motor Express, Inc., 360 F.2d 933 (2d Cir. 1966). *Contra,* 5 Wigmore § 1530a, n. 1, pp. 391–392. The point is not dealt with specifically in the Commonwealth Fund Act, the Uniform Act, or Uniform Rule 63(13). However, Model Code Rule 514 contains the requirement 'that it was the regular

course of that business for one with personal knowledge . . . to make such a memorandum or record or to transmit information thereof to be included in such a memorandum or record . . . .' *The rule follows this lead in requiring an informant with knowledge acting in the course of the regularly conducted activity.*" (Emphasis added)

Under *Exception (8)* then *appears:*

"Public records are a recognized hearsay exception at common law and have been the subject of statutes without number. McCormick § 291. See, for example, 28 U.S.C. § 1733, the relative narrowness of which is illustrated by its nonapplicability to nonfederal public agencies, thus necessitating resort to the less appropriate business record exception to the hearsay rule. Kay v. United States, 255 F.2d 476 (4th Cir. 1958). The rule makes no distinction between federal and nonfederal offices and agencies.

Justification for the exception is the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record. Wong Wing Foo v. McGrath, 196 F.2d 120 (9th Cir. 1952), and see Chesapeake & Delaware Canal Co. v. United States, 250 U.S. 123, 39 S.Ct. 407, 63 L.Ed. 889 (1919). As to items (a) and (b), further support is found in the reliability factors underlying records of regularly conducted activities generally. See Exception (6), supra.

(a) Cases illustrating the admissibility of records of the office's or agency's own activities are numerous.

. . .

(b) Cases subtaining admissibility of records of matters observed are also numerous. . . .

(c) The more controversial area of public records is that of the so-called 'evaluative' report. The disagreement among the decisions has been due in part, no doubt, to the variety of situations encountered, as well as to differences in principle. Sustaining admissibility are such cases as United States v. Dumas, 149 U.S. 278, 13 S.Ct. 872, 37 L.Ed. 734 (1893), statement of account certified by Postmaster General in action against postmaster; McCarty v. United States, 185 F.2d 520 (5th Cir. 1950), reh. denied 187 F.2d 234, Certificate of Settlement of General Ac-

mittee to the proposed *Rules of Evidence* in its discussions of the exceptions in Rule 803 under (6), "Records of regularly conducted activity," and (8), "Public records and reports." Thus the note on Exception (8) refers to this as a recognized hearsay exception, an example of which is

". . . 28 U.S.C. § 1733, the relative narrowness of which is illustrated by its nonapplicability to nonfederal public agencies, thus necessitating resort to the less appropriate business record exception to the hearsay rule. Kay v. United States, 255 F.2d 476 (4th Cir. 1958). The rule [803] makes no distinction between federal and non-federal offices and agencies."

The Note of the Advisory Committee on Exception (6), "Records of regularly conducted activity," specifically discussed a police report which, of course, would be a public record. In its discussion of Exception (8), "Public records and reports" the Note states, "Hence the rule [803(8)] as in Exception (6), assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present."

The case law also contains this overlap between business and official records. The leading case in the Ninth Circuit on 28 U.S.C. § 1732 is Standard Oil Co. v. Moore (1957), 251 F.2d 188, 212–217, cert. denied, 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958).

The court held that a writing will not qualify under 28 U.S.C. § 1732 unless the recitals are factual in nature. *Id.* at 213–214; *accord*, Panotex Pipe Line Co. v. Phillips Petroleum Co. (5 Cir. 1972), 457 F.2d 1279, 1284, cert. denied, 409 U.S. 845, 93 S.Ct. 48, 34 L.Ed.2d 86. The *Standard Oil* court noted that there are special circumstances in which an expert opinion is admissible, but held that expressions of opinions on matters which do not call for professional or

---

counting Office showing indebtedness and letter from Army official stating Government had performed, in action on contract to purchase and remove waste food from Army camp; Moran v. Pittsburgh-Des Moines Steel Co., 183 F.2d 467 (3d Cir. 1950), report of Bureau of Mines as to cause of gas tank explosion; Petition of W——, 164 F.Supp. 659 (E.D.Pa.1958), report by Immigration and Naturalization Service investigator that petitioner was known in community as wife of man to whom she was not married. To the opposite effect and denying admissibility are Franklin v. Skelly Oil Co., 141 F.2d 568 (10th Cir. 1944), State Fire Marshal's report of cause of gas explosion; Lomax Transp. Co. v. United States, 183 F.2d 331 (9th Cir. 1950), Certificate of Settlement from General Accounting Office in action for naval supplies lost in warehouse fire; Yung Jin Teung v. Dulles, 229 F.2d 244 (2d Cir. 1956), 'Status Reports' offered to justify delay in processing passport applications. *Police reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer.* Annot., 69 A.L.R.2d 1148. Various kinds of evaluative reports are admissible under federal statutes . . . . While these statutory exceptions to the hearsay rule are left undisturbed, Rule 802, the willingness of Congress to recognize a substantial measure of admissibility for evaluative reports is a helpful guide.

Factors which may be of assistance in passing upon the admissibility of evaluative reports include: (1) the timeliness of the investigation, McCormick, Can the Courts Make Wider Use of Reports of Official Investigations? 42 Iowa L. Rev. 363 (1957); (2) the special skill or experience of the official, *id.*, (3) whether a hearing was held and the level at which conducted, Franklin v. Skelly Oil Co., 141 F.2d 568 (10th Cir. 1944); (4) possible motivation problems suggested by Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943). Others no doubt could be added.

The formulation of an approach which would give appropriate weight to all possible factors in every situation is an obvious impossibility. Hence the rule, as in Exception (6), assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present. In one respect, however, the rule with respect to evaluative reports under item (c) is very specific: they are admissible only in civil cases and against the government in criminal cases in view of the almost certain collision with confrontation rights which would result from their use against the accused in a criminal case." (Emphasis added)

scientific knowledge are not admissible. *Id.* 185 F.2d at 214. In our case the investigation report contains a statement by Mr. Tso about the speed of the car.

The case holds further:

"[w]here the entrant or maker records information supplied by others, it must appear that 'it was part of their [the declarants'] regular course of business to report to him what the declarants themselves knew, as it was part of his business to record what they said,' United States v. Grayson, 2 Cir., 166 F.2d 863, 869. [Footnote omitted.] Where the information comes to the entrant or maker from unauthorized persons, the memorandum or record is therefore inadmissible, not because it contains hearsay, but because it was not made in the regular course of business." *Id.* 251 F.2d at 214.

For a document to be admissible under 28 U.S.C. § 1733 (Official Records) "the facts stated in the document must have been within the personal knowledge and observation of the recording official or his subordinates, and . . . reports based upon general investigations and upon information gleaned second hand from random sources must be excluded." (Citing cases.) Olender v. United States (9 Cir. 1954), 210 F.2d 795, 801; *accord,* Independent Iron Works, Inc. v. United States Steel Corp. (9 Cir. 1963) 322 F. 2d 656, 671–672, cert. denied, 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 165. *Contra,* McKee v. Jamestown Baking Co. (3 Cir. 1952), 198 F.2d 551, 556 (error not to admit police chief's report which summarized witnesses' statements, but not prejudicial because he testified in person), limited to its facts, Gordon v. Robinson (3 Cir. 1954), 210 F.2d 192, 197–198 n. 9 (reversible error in admitting officer's oral opinions, based on report, on ultimate issues); Juaire v. Nardin (2 Cir. 1968), 395 F.2d 373, 379, cert. de-

nied sub nom. Juaire v. Walter Marshak, Inc., 393 U.S. 938, 89 S.Ct. 302, 21 L. Ed.2d 274 (declarants to reporting officer also testified; error, but not prejudicial, to admit report as stipulated in pretrial order).

When reports are not prepared in the regular course of business, they are not admissible under 28 U.S.C. § 1732. *See* Carroll v. United States (9 Cir. 1963), 326 F.2d 72, 79; Niederkrome v. Comm'r (9 Cir. 1958), 266 F.2d 238, 241–242, cert. denied sub nom., Royce v. Comm'r, 359 U.S. 945, 79 S.Ct. 725, 3 L.Ed.2d 678 (1959); Savannah Bank & Trust Co. v. Great American Indem. Co. (1 Cir. 1962), 303 F.2d 247, 250. But where prepared in the regular course of business by a subcontractor's foreman and identified by its district manager, a report showing the date of completion of work was admissible. United States ex rel. "Automatic" Sprinkler Corp. of America v. Merritt-Chapman & Scott Corp. (3 Cir. 1962), 305 F. 2d 121, 123–124.

Hearsay contained in a police report is inadmissible under 28 U.S.C. § 1732. United States v. Burruss (4 Cir. 1969), 418 F.2d 677, 679; United States v. Graham (6 Cir. 1968), 391 F.2d 439, 447–448; United States v. Shiver (5 Cir. 1969), 414 F.2d 461, 462–463. Entries in a police report based on an officer's observation and knowledge may be admitted, but statements attributed to other persons are clearly hearsay, and inadmissible under the common law exception to the hearsay rule or under 28 U.S.C. § 695 (now § 1732). Gencarella v. Fyfe (1 Cir. 1948), 171 F.2d 419, 421–422.

We hold that it was error to admit Tso's statement into evidence, based on Standard Oil Co. v. Moore and other cases discussed, *supra,* and with strong reliance on the Advisory Committee Note to Rule 803, *supra.*[4]

4. We expressly do not reach beyond the circumstances of this case to imply any opinion concerning such related but distinct matters as:

(1) Use of accident reports prepared by a business for litigation, Palmer v. Hoffman, 318 U.S. 109, 113–114, 63 S.Ct. 477, 87 L.Ed. 645 (1943); the

*The Reliance on Mrs. Colvin's Diary*

The trial court found:

"At the time of her death, the deceased, Mary E. Colvin was in good health, maintained and managed the family household, was exceptionally active in civic and charitable affairs, and had the capacity and disposition to earn an annual income of six thousand dollars."

■ There was testimony that she had worked as a part-time Avon saleslady for approximately one and one-half years, from 1962 to 1964, but had not been employed in any gainful capacity from 1964 to the date of her death on May 27, 1965. A daughter testified Mrs. Colvin had not worked from 1958 until late 1962, when she commenced selling for Avon.

The trial was held in June 1970. Colvin testified on voir dire that he had found his tax returns for the last five years but had not brought them with him. The five years he referred to were the years from 1965 to 1970. The accident occurred in 1965. He could not find any tax returns for the period from 1960 to 1965, stating he may have thrown them away; that he could find no records from any source whatsoever of the earnings of the deceased for the years 1960 to 1965.

He was asked: "Q. Any information that you have about your wife's income comes from what source?" Answer: "She kept a daily diary, and in that she recorded the amount she earned each day and her total for each, what they called, campaign or Avon work." He also made a reference to her bank book.

The Government objected for lack of foundation on the ground that the testimony supposedly came from a diary kept by the deceased. The objection was overruled and Colvin was permitted to testify that, based upon his recollection of having looked at a diary kept on a day-to-day basis by Mrs. Colvin, she had earned $800 in the first four to four and one-half months of 1964, approximately $2,000 in 1963, and somewhat less than $2,000 in the years preceding 1963. Neither the diary nor the bank deposit book was produced.

No attempt was made, other than the above, to qualify the diary or the bank book as a business record under 28 U.S. C. § 1732, nor to prove that the diary was lost, destroyed or could not be found. Colvin in his brief argues that the diary itself "could have been admitted"; that although conceding there was no direct testimony concerning the whereabouts of the diary it was "most probable" that the diary had either been misplaced or discarded and that the testimony was admissible as secondary evidence of the contents of the diary.

We hold that it was error to admit testimony purportedly coming from the diary.

As to the Government's contention that the court failed to make specific findings and/or conclusions for the basis of its award, we suggest that on retrial, the court should more specifically detail in its findings and conclusions the basis for any judgment.

Reversed and remanded.

use of such reports against the preparing business, Leon v. Penn Central Co. (7 Cir. 1970) 428 F.2d 528; Pekelis v. Transcontinental & Western Air, Inc. (2 Cir. 1951) 187 F.2d 122, 129–130, cert. denied, 341 U.S. 951, 71 S.Ct. 1020, 95 L.Ed. 1374, see Taylor v. Baltimore & O. R. Co. (2 Cir. 1965), 344 F.2d 281, 286, cert. denied, 382 U.S. 831, 86 S.Ct. 72, 15 L.Ed.2d 75; Anno., 10 A.L.R.Fed. 858 (1972).

(2) Admissibility of third-party hearsay reports to postal authorities, United

States v. Lange (9 Cir. 1972), 466 F.2d 1021, 1024–1025; or to investigating bodies of government, Vaccaro v. Alcoa S. S. Co. (2 Cir. 1968), 405 F.2d 1133, 1135–1137.

(3) Matters contained in Selective Service files. La Porte v. United States (9 Cir. 1962), 300 F.2d 878, 880–881; United States v. Grans (9 Cir. 1972), 472 F.2d 597; United States v. Hudson (9 Cir., 1972), 479 F.2d 251.