UNITED STATES of America,
Plaintiff-Appellee,

v.

Jerald Lee SIMS, Defendant-Appellant.

No. 79-1540.

United States Court of Appeals,
Ninth Circuit.

April 30, 1980.

Michael R. Shinn, Portland, Or., for defendant-appellant.

Ronald H. Hoevet, Asst. U. S. Atty., Portland, Or., for plaintiff-appellee.

Before DUNIWAY and ANDERSON, Circuit Judges, and GRANT,* District Judge.

---

\* The Honorable Robert A. Grant, Senior United States District Judge for the District of Indiana, sitting by designation.

1. Since Sims was charged with bank robbery in violation of 18 U.S.C. § 2113(a)(d), the district court had jurisdiction under 18 U.S.C. § 3231. Judgment of conviction was entered against

**J. BLAINE ANDERSON, Circuit Judge:**

After a jury trial, Sims was convicted of one count of bank robbery.[1] On appeal, Sims challenges: (1) the sufficiency of the evidence; (2) an eyewitness identification; (3) the failure to appoint an expert witness; (4) the failure to admit an FBI report; and (5) the admission of evidence relating to his failure to return to a halfway house. We find no error justifying reversal and affirm his conviction.

## I. BACKGROUND

On the afternoon of December 21, 1978, two men robbed the Lombard Branch of the Lincoln Savings & Loan Association. The only people in the bank when the robbers entered were Marilyn Endicott, the bank's supervisor, and an elderly gentleman named Romansky, who was a customer. The robbers pushed Romansky against the counter and then ordered him onto the floor. Endicott was also ordered to the floor, and while going down she pushed the alarm button. Endicott was then ordered to get up and open the cash drawer. After one of the robbers removed the bills from the drawer, they both left the bank.

The robbers wore stocking caps over their heads and scarves pulled up around their mouths. After the robbery, Endicott described one of the robbers as having a slight build and being five feet seven or eight inches, and the other as stockier and about five feet six. Five days later, Endicott was shown a photo spread of seven men. She picked out Sims because of his eyes.

Approximately one block from the bank, on the afternoon of the robbery, two men walked in front of Charles Dodge's car. Dodge wrote down the license plate number

Sims on May 29, 1979. On June 21, 1979, Sims moved for an extension of time within which to appeal. This was granted on June 22 under Fed.R.App. 4(b). On June 27 Sims filed his notice of appeal. Because of the extension, the appeal was timely and this court has jurisdiction under 28 U.S.C. § 1291.

of their parked car: FMK 762. A few minutes later, Dodge saw the two men, with their faces covered, running down the street from the bank. Larry Rasmussen also saw two men running in the same area. Because of the unusual behavior, Rasmussen wrote down part of the license plate number from the two men's car: 762.

Sims had borrowed his nephew's (Daryl's) car on the morning of the robbery. The car's license plate numbers were FMK 762. Sims returned the car to his nephew around 2:00 p. m. on the 21st and then they both drove to the home of Daryl's grandmother. Upon arrival there, the grandmother, who had already been contacted by the police, told Daryl and Sims that the car had been involved in a bank robbery.

Prior to the robbery, Sims had been staying at the Federal Halfway House in Vancouver, Washington. He checked out on the morning of December 21st and was scheduled to return that evening. He never did. He was arrested weeks later and charged with the robbery of the Lombard bank.

## II. *DISCUSSION*

### 1. *Sufficiency of the Evidence*

 The evidence, considered most favorably to the government, was sufficient to permit the jury to rationally conclude that Sims was guilty beyond a reasonable doubt. *See United States v. Nelson*, 419 F.2d 1237, 1242 (9th Cir. 1969). The minor inconsistencies and discrepancies which Sims relies upon might make a good jury argument, but are not sufficient to overcome the adverse verdict. The victim, Endicott, positively identified Sims as one of the two robbers. Sims was concretely linked to the car which was shown to have

been the probable getaway car. And finally, it was permissible to infer a consciousness of guilt from Sims' failure to return to the halfway house.

### 2. *Eyewitness Identification*

 Although Sims claims that his due process rights were violated by Endicott's identification of him, he totally fails to offer any support for his argument. Sims does not allege that the pretrial identification was impermissibly suggestive, nor could he make such an argument. *Mata v. Sumner*, 611 F.2d 754, 757–758 (9th Cir. 1979); *United States v. Cook*, 608 F.2d 1175, 1178–1179 (9th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 706, 62 L.Ed.2d 670. And, as the government points out, the factors relied upon in evaluating the reliability of the identification (opportunity to view, attention, description, certainty, time elapsed) do not support Sims' argument. *See Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972); *Manson v. Braithwaite*, 432 U.S. 98, 114–116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *see Green v. Loggins*, 614 F.2d 219, 224–225 (9th Cir. 1980); *Washington v. Cupp*, 586 F.2d 134, 136–137 (9th Cir. 1978), *cert. denied*, 441 U.S. 909, 99 S.Ct. 2003, 60 L.Ed.2d 379.

### 3. *Failure to Appoint an Expert Witness*

Prior to trial, Sims made a timely motion for the appointment of a psychologist to assist his defense under 18 U.S.C. § 3006A(e)(1).[2] Because of the importance of the eyewitness identification, Sims sought the services of a psychologist to assist the defense prior to trial and "to testify on behalf of the defense regarding the scientific proof which exists on the un-

---

**2.** This provision provides as follows:

"Counsel for a person who is financially unable to obtain investigative, expert, or other services necessary for an adequate defense may request them in an ex parte application. Upon finding, after appropriate inquiry in an ex parte proceeding, that the services are

necessary and that the person is financially unable to obtain them, the court, or the United States magistrate if the services are required in connection with a matter over which he has jurisdiction, shall authorize counsel to obtain the services."

18 U.S.C. § 3006A(e)(1).

reliable nature of eyewitness identification and the various cognitive and social factors that affected the accuracy of the particular identification in the case at hand." On appeal, Sims claims that the failure to appoint the psychologist violated his Fifth Amendment, Sixth Amendment, and statutory (18 U.S.C. § 3006A) rights.

We recognize that the government's duty "to provide an indigent criminal defendant with the essential tools of trial defense is of both a constitutional and statutory dimension." *United States v. Rosales-Lopez,* 617 F.2d 1349, 1355 (9th Cir., 1980). Sims does not attempt to explain, nor are we able to perceive, how the failure to appoint an expert rose to the level of a constitutional violation in this case.

Turning to the statutory part of his argument, this court has established the following standard for determining when an expert must be appointed for an indigent defendant under 18 U.S.C. § 3006A(e)(1) of the Criminal Justice Act:

"Where expert services are necessary to an adequate defense the court must authorize them. *E. g., Christian v. United States,* 398 F.2d 517, 519, 6 A.L.R.Fed. 1001 (10th Cir. 1968). A clear standard for deciding what constitutes 'necessity' under § 3006A(e) has not yet been stated in this circuit. We agree with the views of Judge Wisdom, concurring in *United States v. Theriault,* 440 F.2d 713, 716–717 (5th Cir. 1971). *The statute requires the district judge to authorize defense services when the defense attorney makes a timely request in circumstances in which* *a reasonable attorney would engage such services for a client having the independent financial means to pay for them."* (emphasis added)

*United States v. Bass,* 477 F.2d 723, 725 (9th Cir. 1973). This approach has been followed in several other cases. *United States v. Hartfield,* 513 F.2d 254, 257 (9th Cir. 1975); *Brinkley v. United States,* 498 F.2d 505, 509–510 (8th Cir. 1974); *see United States v. Durant,* 545 F.2d 823, 827 (2d Cir. 1976). The question, therefore, becomes whether a reasonable attorney would have engaged an eyewitness expert in this type of case. The answer is probably not. The admissibility of this type of expert testimony is strongly disfavored by most courts. *See United States v. Amaral,* 488 F.2d 1148, 1152–1154 (9th Cir. 1973); *United States v. Fosher,* 590 F.2d 381, 382–384 (1st Cir. 1979).[3] Moreover, this court has held that a defendant has the burden of showing prejudice, by clear and convincing evidence, caused by the court's failure to appoint an expert. *United States v. Washabaugh,* 442 F.2d 1127, 1130 (9th Cir. 1971); *United States v. Spaulding,* 588 F.2d 669 (9th Cir. 1978). Sims has not shown how his cross-examination of the eyewitness was any less effective without the services of the expert. He also has not shown how the expert could have assisted the defense in any other way. Therefore, it does not appear that a "reasonable attorney" would employ an expert in this situation or that Sims suffered any prejudice.

### 4. Failure to Admit the FBI Report

At trial, Sims' attorney attempted to read a portion of an FBI report into evidence.

---

**3.** The government argues that if the court can exclude an expert's testimony within its discretion, then it must be within the court's discretion to refuse to authorize funds for that purpose under the Criminal Justice Act. Admissibility becomes the test for appointment. This approach is followed in the First and Seventh Circuits. *See Fosher, supra,* 590 F.2d at 384 (1st Cir. 1979); *United States v. Penick,* 496 F.2d 1105, 1110 (7th Cir. 1974), *cert. denied,* 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 141. We reject the suggestion that we adopt this approach. While the admissibility or acceptance of a particular type expert's field of study may be a factor in considering the "necessity" (see *Bass, supra* ) of appointing an expert, to hold that it was the only factor would be inconsistent with the underlying purpose of the Criminal Justice Act. *See Hartfield, supra,* 513 F.2d at 258. And, as this court said in *Bass, supra,* the expert's "services embrace pretrial and trial assistance to the defense as well as potential trial testimony." 477 F.2d at 726.

Romansky, the only other witness to the robbery, had died before the case came to trial. However, prior to his death, Romansky had given a description of both robbers to the investigating FBI agent who had included it in his report. According to Sims' attorney, this description conflicted with the one which was given by the other eyewitness, Endicott.[4]

The government objected based on the ground that it was hearsay. Sims' counsel then responded that the report should come in under the business records exception to the hearsay rule. After both attorneys had the opportunity to argue, the trial judge impliedly ruled that the report was not admissible.[5]

On appeal, Sims offers three separate grounds under which the report should have been admissible. First, he argues that Romansky's statement in the report was not hearsay since it was not offered to prove the truth of the statement.[6] Second, he repeats his argument about the report qualifying as a business record.[7] And third, Sims claims that the report was admissible under the public records exception to the hearsay rule.[8]

■ We will first address the one basis for admissibility which was raised in the district court, that is the business records exception. Sims claims that, relying entirely upon cases decided prior to the adoption of the Federal Rules of Evidence, "police reports [were] business records within the

---

4. Unfortunately, the FBI report was not made part of the court's record nor did Sims' counsel make much of an offer of proof. *See* Fed.R. Evid. 103(a) & (b); *United States v. Brady*, 579 F.2d 1121, 1130–1131 (9th Cir. 1978), *cert. denied*, 439 U.S. 1074, 99 S.Ct. 849, 59 L.Ed.2d 41. For purposes of our review, we accept the representation of Sims' counsel that Romansky's description conflicted with Endicott's. We also accept the representation made by government counsel that Romansky did not have much of an opportunity to observe since he remained on the floor throughout the robbery. *See* Fed.R.Evid. 103(a)(2); *United States v. Nevitt*, 563 F.2d 406, 409 (9th Cir. 1977), *cert. denied*, —— U.S. ——, 100 S.Ct. 95, 62 L.Ed.2d 61.

5. We use "impliedly" because both the defense and the government assume that the trial court ruled against admission. However, the record is unclear as to whether this was merely a comment or a ruling.

6. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R. Evid. 801(c). It goes without saying that the broad exclusion of the hearsay rule has no bearing on those statements which are not offered to prove the truth of the matter asserted therein.

7. The business records exception is contained in Fed.R.Evid. 803(6) which provides that the following matters are not excluded by the hearsay rule:

"A memorandum, report, record, or data compilation, in any form, of acts, events,

conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term 'business' as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."
Fed.R.Evid. 803(6).

8. The public records exception is contained in Fed.R.Evid. 803(8) which provides that the following matters are not excluded by the hearsay rule:

"Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."
Fed.R.Evid. 803(8).

meaning of the Act." [9] Contrary to this contention, there was no broad sweeping rule in favor of the admission of police reports. While limited portions of police reports were admissible (*United States v. Wolosyn*, 411 F.2d 550, 551 (9th Cir. 1969)), statements in the reports which were attributed to other persons were generally excluded. *United States v. Smith*, 521 F.2d 957, 964 (D.C.Cir.1975); *United States v. Colvin*, 479 F.2d 998, 1003 (9th Cir. 1973).[10] Romansky's statement in the FBI report was clearly of the type which this court held inadmissible in *Colvin, supra*. *See Hill v. Rolleri*, 615 F.2d 886, 890 n. 3 (9th Cir. 1980).

This court recently considered the hearsay problem which is presented by records which are kept by law enforcement personnel. In *United States v. Orozco*, 590 F.2d 789 (9th Cir. 1979), *cert. denied*, 439 U.S. 1049, 99 S.Ct. 728, 58 L.Ed.2d 709, this court acknowledged that this type of reports could be covered by the business records exception (Rule 803(6)), but nevertheless found that inquiry under Rule 803(6) was inappropriate since Rule 803(8) expressly states an exception which applies to public records. 590 F.2d at 793. Moreover, the plain language of Rule 803(8) makes it abundantly clear that it is the rule which covers reports made by law enforcement personnel.

We conclude that the trial court did not abuse its discretion in refusing to admit the FBI report under the business record exception to the hearsay rule.

Since the other grounds were not raised in the district court, this court must employ a much more limited scope of review in considering them. A party must make known to the court "at the time the ruling or order is made or sought, . . . the action which he desires the court to take or his objection to the action of the court and the grounds therefor." Fed.R. Crim.P. 51. The presentation of additional evidentiary theories on appeal is inconsistent "with the salutary purpose of the timeliness requirement to allow the trial judge to make an informed ruling based on the issues as framed by the parties *before* the evidence is . . . excluded." *United States v. Lara-Hernandez*, 588 F.2d 272, 274 (9th Cir. 1978). "Absent plain error, a conviction will not be reversed on evidentiary grounds not revealed to the trial court at the time of the assertedly erroneous ruling." *Id.; United States v. Rich*, 580 F.2d 929, 938 (9th Cir. 1978), *cert. denied*, 439 U.S. 935, 99 S.Ct. 330, 58 L.Ed.2d 33; Fed. R.Crim.P. 52(b). Plain error is only found in exceptional circumstances where the reviewing court finds that reversal "is necessary to preserve the integrity and reputation of the judicial process, or to prevent a miscarriage of justice." *United States v. Krasn*, 614 F.2d 1229, 1236 (9th Cir. 1980); *United States v. Giese*, 597 F.2d 1170, 1199 (9th Cir. 1979), *cert. denied*, —— U.S. ——, 100 S.Ct. 480, 62 L.Ed.2d 1170; *Rich, supra*, 580 F.2d at 938; *United States v. Segna*, 555 F.2d 226, 231 (9th Cir. 1977).

We assume, for the purposes of our review, that the FBI report was admissi-

---

9. By the "Act" Sims is referring to the old Business Records Act (28 U.S.C. § 1732(a), repealed Pub.L.No. 595, § 2(b), 88 Stat. 1926, 1949 (1975)) which now appears in a similar form as Fed.R.Evid. 803(6).

10. As Judge J. Skelly Wright said in *Smith, supra*:

"Therefore, that part of the Form 251 containing the witness' description is not admissible as substantive evidence under the business records exception." (citations and footnote omitted)

521 F.2d at 964. And, as Judge Carter wrote for this court in *Colvin, supra*:

"Entries in a police report based on an officer's observation and knowledge may be admitted, but statements attributed to other persons are clearly hearsay, and inadmissible under the common law exception to the hearsay rule or under 28 U.S.C. § 695 (now § 1732)."

479 F.2d at 1003.

ble.[11] Nevertheless, the failure to admit it into evidence did not cause a miscarriage of justice nor did it impugn the reputation and integrity of the courts. Although the report contained a description which *may* have been conflicting with that given by the other eyewitness, it is unclear from the record what, if any, weight the jury could give to Romansky's statement. After all, Romansky remained on the floor throughout the robbery and there was absolutely no indication as to whether he had the opportunity, let alone how much of an opportunity, to even view the robbers. Moreover, Endicott, the other eyewitness, gave a strong identification of Sims, an identification which this court finds, as the jury must also have found, extremely reliable. Endicott was a bank employee. She was able to observe Sims throughout the time that he was in the bank. While the robbery was taking place, she intentionally concentrated on the face of the robber who she later identified as Sims. In addition, the government successfully linked Sims to the getaway car. And (as we explain *infra*) it was entirely proper for the jury to infer consciousness of guilt due to Sims' failure to return to the halfway house. We therefore conclude that the failure to admit the FBI report was not plain error.

### 5. *Failure to Return to the Halfway House*

Sims claims that the admission of the evidence relating to his failure to return to the halfway house allowed the jury to impermissibly draw an inference that he had been involved in criminal activity in the past. He argues that it should have been excluded under Fed.R.Evid. 404(b).[12]

 When the government offers evidence of prior crimes or bad acts as part of its case in chief, "it has the burden of first establishing relevance of the evidence to prove a fact within one of the exceptions to the general exclusionary rule of Rule 404(b) and thereafter of showing that the proper relevant evidence is more probative than it is prejudicial to the defendant." *United States v. Hernandez-Miranda*, 601 F.2d 1104, 1108 (9th Cir. 1979). The balancing or weighing of the probative value versus the prejudicial effect is committed to the trial judge's sound discretion. *United States v. Bettencourt*, 614 F.2d 214, 218 (9th Cir. 1980).

 Sims' failure to return to the halfway house was relevant because it tended to identify him as one of the robbers. Flight immediately after the commission of a crime, especially where the person learns that he may be a suspect, as had Sims, supports an inference of consciousness of guilt. *Hernandez-Miranda, supra*, 601 F.2d at 1106–1107. It was therefore relevant under the identity exception to Rule 404(b).

 We must also examine the prejudicial effect to Sims to determine whether the district court struck the proper balance. Sims is correct in his assertion that the jury may have inferred from his residency in the halfway house that he had previously been involved in some other criminal activity. However, the trial judge carefully confined the jury's consideration of this matter and thus mitigated any possible prejudice. The testimony was limited to a showing that Sims was a resident of the halfway house, was required to return, and had failed to return on the day of the robbery. There was absolutely no mention made of any of Sims' prior criminal activity. Additionally, there was no testimony that only convicted

---

**11.** The report may have been admissible under several possible theories: the statements were not hearsay (Fed.R.Evid. 801(c)); the public records exception (Fed.R.Evid. 803(8)); the other exceptions (Fed.R.Evid. 803(24), 804(b)(5)).

**12.** This rule provides as follows:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
Fed.R.Evid. 404(b).

criminals resided at the halfway house. Moreover, the trial judge correctly instructed the jury as to what weight, if any, they could give to the evidence of Sims' failure to return to the halfway house.

We believe that the trial court did not abuse its discretion in admitting evidence of Sims' flight or failure to return to the halfway house.

AFFIRMED.