**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Hugo RINCON, Defendant–Appellant.**

**No. 90–50491.**

United States Court of Appeals,
Ninth Circuit.

Submitted Nov. 3, 1992.*

Decided Jan. 28, 1993.

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Neison M. Marks, Deputy Federal Public Defender, Los Angeles, CA, for defendant-appellant.

Alejandro N. Mayorkas, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before Chief Judge WALLACE, TROTT, and T.G. NELSON, Circuit Judges.

T.G. NELSON, Circuit Judge:

Hugo Rincon was convicted on two counts of unarmed bank robbery. On appeal, he contends that the district court erred in refusing to admit expert testimony regarding the reliability of eyewitness testimony. He also argues the district court committed error when it allowed the jury to view Rincon next to a surveillance photograph after jury deliberations had begun.

The district court had jurisdiction pursuant to 18 U.S.C. § 3231 (1988). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We affirm.

## I. FACTS AND PROCEDURAL HISTORY

The indictment charged Rincon with the robbery of two different banks on different days in April, 1988. The demand note in each robbery was the same: "This is a robbery. Don't make it a murder. Give me all the money now." The robber wore sunglasses during the first robbery, and in the second, the robber spoke Spanish and wore a baseball cap.

The teller at the first bank was unable to make an in-court identification, but had picked Rincon out of a photo spread three to four months after the robbery. Four witnesses testified to Rincon's identity as the robber of the second bank. One witness made an in-court identification, as well as having picked Rincon out of the photo spread three months after the robbery. Two witnesses were unable to make in-court identifications, but had picked Rincon out of a photo spread about a year after the robbery. One witness made an in-court identification, but did not make a photo spread identification.

All of the witnesses agreed that the robber did not have a mustache at the time of the robberies. Rincon had a mustache during the trial, but refused to shave it off when the district court ordered him to do so. The district court gave a consciousness of guilt instruction which is not challenged in this appeal.

The district court denied Rincon's pretrial motion *in limine* in which he sought a ruling that would allow him to introduce the testimony of an expert witness on eyewitness identification. Rincon offered the testimony of an "experimental psychologist" who was a full professor of the Claremont Graduate School of Psychology. She would offer no opinion about the specific eyewitness identifications involved in Rincon's case. Rather, she would discuss the phases of eyewitness identification and the effect of various psychological factors on each phase. In addition, she would state that empirical evidence contradicts numerous lay notions of eyewitness identifications. Rincon contends the district court erred in rejecting that expert testimony.

Rincon did not testify at the trial. His defense consisted of presenting himself to the jury in order to contrast his appearance with that of a surveillance photograph of the robber which the government had introduced as a trial exhibit.

After the jury had started deliberations, they communicated with the district judge, asking to see the defendant standing next to the surveillance photograph, with and without sunglasses. Over Rincon's objections, the district judge permitted them to view Rincon without sunglasses next to the photograph. Because no sunglasses were in evidence, the district judge denied the jury's request to see Rincon with sun-

glasses. Rincon contends that the court erred in permitting this comparison while the jury was deliberating.

## II. THE EXPERT TESTIMONY

■ We review for abuse of discretion the district court's determination to exclude expert testimony regarding the unreliability of eyewitness identifications. *United States v. Poole*, 794 F.2d 462, 468 (9th Cir.) ("[t]he trial court has 'broad discretion' to admit or exclude expert testimony ... [and] [w]e will not reverse the trial court's ruling unless we conclude that it was 'manifestly erroneous' ") (citations omitted), *amended on other grounds*, 806 F.2d 853 (9th Cir.1986).

■ Expert testimony is admissible only when it will assist the jury in understanding the case. Federal Rule of Evidence 702 provides that an expert may testify when it "will assist the trier of fact to understand the evidence or to determine a fact in issue...." In addition, the advisory committee's note to Fed.R.Evid. 702 states that a common sense inquiry is appropriate to determine whether a juror would be qualified to decide an issue intelligently without enlightenment from an expert.

■ Thus, in order to determine whether the testimony was properly excluded, we must focus upon whether the jury would receive "appreciable help" from the expert testimony. *United States v. Christophe*, 833 F.2d 1296, 1299 (9th Cir.1987). Four criteria guide us in determining whether the expert testimony will assist the jury: "(1) qualified expert; (2) proper subject; (3) conformity to a generally accepted explanatory theory; and (4) probative value compared to prejudicial effect." *United States v. Amaral*, 488 F.2d 1148, 1153 (9th Cir. 1973); *see also* Fed.R.Evid. 702. Only the third and fourth factors are at issue here.

### a. *Generally Accepted Theory*

■ Before an expert is allowed to testify, the offering party must establish that the testimony is generally accepted in the particular field of expertise: "Unless the testimony conforms to a generally accepted explanatory theory, it will not be the best available approximation of truth in the judgment of the majority of scientists who work in the particular specialty involved." *Christophe*, 833 F.2d at 1299; *see also Poole*, 794 F.2d at 468 (expert testimony will only be admitted if it is in accordance with a generally accepted explanatory theory not known by the average person).

In *Christophe*, this court faced the same issue presented here; i.e., whether the district court erred in excluding expert testimony on eyewitness identification. *Christophe*, 833 F.2d at 1299–1300. In affirming the district court, we stated that "the proffered expert testimony does not conform to a generally accepted explanatory theory. Psychologists do not generally accept the claimed dangers of eyewitness identification in a trial setting." *Id.* (citing McCloskey & Egeth, *Eyewitness Identification: What Can A Psychologist Tell A Jury?* 38 AM. PSYCHOLOGIST 550, 551 (May 1983) ("there is virtually no empirical evidence that [jurors] are unaware of the problems with eyewitness testimony")). We also noted that psychologists warn such expert testimony may make jurors overly skeptical of an eyewitness' testimony as a result of the expert's testimony. *Id.* at 1300 n. 1.

■ In this case, Rincon failed to convince the district court judge that the expert's testimony on eyewitness identification is generally accepted in the field. The judge stated: "no offer of proof had been made to show that the expert testimony had reached that degree of science as opposed to an opinion ... that makes it a science rather than an art." Although Rincon's counsel argued during his motion *in limine* that he thought the expert eyewitness testimony is well accepted in the scientific community, he only cited a few state and federal courts in support of that proposition, none of which control here.

Furthermore, this court has stated that while "[w]e are aware that other federal courts and state courts are beginning to accept expert testimony on the psychological factors affecting eyewitness identifications, at least in some circumstances. The

reasoning behind those authorities is better directed to the district court at the time it exercises its discretion." *Poole*, 794 F.2d at 468 (citations omitted). Therefore, the district court did not err in ruling that expert testimony on eyewitness identification is not a generally accepted theory.

### b. *Probative Value: Assistance to the Jury*

■ In determining whether the eyewitness expert testimony was properly excluded, we must next consider its probative value in comparison to the prejudicial effect. We have stated that "a jury is helped appreciably when testimony is probative rather than prejudicial, confusing, or misleading." *Christophe*, 833 F.2d at 1299. Moreover, courts are not required to admit expert testimony on the unreliability of eyewitness testimony and we have continually upheld its exclusion. *Id.* ("[n]o federal authority requires the admission of testimony on the unreliability of eyewitnesses"); *United States v. Langford*, 802 F.2d 1176, 1179–80 (9th Cir.1986) (upholding exclusion of expert testimony on eyewitness identification because although its admission may be appropriate under certain circumstances, court is not required to admit it), *cert. denied*, 483 U.S. 1008, 107 S.Ct. 3235, 97 L.Ed.2d 740 (1987).

■ In this case, the district court determined that the proffered expert testimony would in fact confuse and mislead the jury. The judge made a determination that the prejudicial value of this expert testimony outweighed its probative value. In so deciding, he did not abuse his discretion; rather, his ruling was consistent with Ninth Circuit precedent.

Rincon next argues that the expert testimony offered in this case was admissible because it differed from that testimony excluded in our previous cases and it was tied to the specific eyewitness testimony presented in his case. However, the expert testimony we considered in *Poole* is almost identical to that proffered in the present case.[1] Both here and in *Poole* the expert testimony focused upon stress, cross-gender or cross-ethnic identifications, suggestibility, and passage of time. *Poole*, 794 F.2d at 468 (upholding exclusion of eyewitness expert testimony).

Moreover, we have consistently upheld the exclusion of expert testimony on the reliability of eyewitness identification, reasoning that effective cross-examination will reveal any inconsistencies or discrepancies in eyewitness identifications. *Poole*, 794 F.2d at 468. In *Amaral*, we stated that it is not " 'appropriate to take from the jury their own determination as to what weight or effect to give to the evidence of the eyewitness....' " 488 F.2d at 1153 (quoting trial court with approval). In addition, "[w]e adhere to the position that skillful cross examination of eyewitnesses, coupled with appeals to the experience and common sense of jurors, will sufficiently alert jurors to specific conditions that render a particular eyewitness identification unreliable." *Christophe*, 833 F.2d at 1300.

■ The eyewitness expert in this case would have testified neither to anything beyond the bounds of the jurors' common knowledge nor to anything that could not be revealed during an effective cross-examination. Cross-examination was sufficient to reveal any deficiencies in the eyewitness testimony involved. After examining the record, we are satisfied that Rincon's counsel effectively elicited testimony from the eyewitnesses that revealed the inconsistencies and deficiencies in each witness' particular identification. Finally, the district court judge instructed the jury as to the potential unreliability of eyewitness testimony: "innocent miss-recollection, like failure of recollection, is not an uncommon experience." *See Poole*, 794 F.2d at 465, 468 (upholding exclusion of expert testimony on eyewitness identification, noting judge instructed jury on factors to consider in evaluating reliability of eyewitness iden-

---

1. The proffered witness in the present case would have explained three phases of eyewitness testimony: perception and encoding; storage and retention; and retrieval. She would also have testified as to various factors that affect eyewitness testimony, including eyewitness' state of mind, stress, suddenness, suggestibility and cross-ethnic identifications.

tification). Therefore, because Rincon failed to lay a sufficient foundation for admission of the expert eyewitness testimony, the district court did not abuse its discretion in excluding it.

## III. REVIEW OF EVIDENCE

■ Rincon, relying on our decision in *United States v. Navarro-Garcia,* 926 F.2d 818 (9th Cir.1991), contends that he was denied due process because the district court allowed the jury to view him next to a surveillance photograph after jury deliberations had begun. He argues that this display was extrinsic evidence not introduced at trial, and thus was prejudicial. We reject these arguments.

Rincon's reliance on *Navarro* is misplaced and does not resolve the issue before us. *Navarro* involved a situation in which a juror had conducted an experiment on her own, outside the courtroom, by adding three hundred pounds to the trunk of her car to determine what effect the weight would have on the car. *Id.* at 820. The juror was hoping to find out whether it was plausible that the defendant did not know 344 pounds of marijuana were present in the trunk of her car. *See id.*

*Navarro* emphasized that jurors have a duty to consider only the evidence presented to them in court. *Id.* at 821. It then defined "extrinsic evidence" to include "[e]vidence not presented at trial, acquired through out-of-court experiments or otherwise...." *Id.* When extrinsic evidence is presented to a jury, the defendant is entitled to a new trial if " 'there exist[s] a reasonable possibility that the extrinsic material could have affected the verdict.' " *Id.* (quoting *United States v. Vasquez,* 597 F.2d 192, 193 (9th Cir.1979)) (brackets in original). *Navarro* held that remand for an evidentiary hearing was necessary to determine what affect the extrinsic evidence had on the jurors. *Id.* at 822–23.

However, in this case, the display which occurred while the jury was deliberating does not fall within *Navarro's* definition of extrinsic evidence because all the evidence at issue, the surveillance photograph and Rincon himself, were presented to the jury during the trial prior to deliberations. The surveillance photograph was admitted into evidence; two witnesses made in-court identifications of Rincon; and finally, Rincon's sole defense consisted of displaying himself in front of the jury for identification purposes. Therefore, the district court's decision to allow the jury to view the defendant next to the surveillance photograph is not reviewed pursuant to the extrinsic evidence standard outlined in *Navarro;* rather, it must be considered a review of evidence presented during trial.

■ The trial court's decision to replay testimony during jury deliberations is reviewed for abuse of discretion. *United States v. Binder,* 769 F.2d 595, 600 (9th Cir.1985); *United States v. Nickell,* 883 F.2d 824, 829 (9th Cir.1989) (holding it was not abuse of discretion for district court to permit jury to review excerpts of a witness' testimony during deliberations). Our concern with replaying testimony is that it may place undue emphasis on testimony considered a second time after the jury has already begun its deliberations. *United States v. Sacco,* 869 F.2d 499, 501 (9th Cir.1989). Because the district judge is in the best position to evaluate this risk of undue emphasis, we have traditionally accorded the trial court "great latitude" in deciding whether to replay testimony requested by the jury. *United States v. Nolan,* 700 F.2d 479, 486 (9th Cir.), *cert. denied,* 462 U.S. 1123, 103 S.Ct. 3095, 77 L.Ed.2d 1354 (1983).

In *Binder,* we held that it was abuse of discretion for the district court to allow the children's videotape testimony in a child molestation case to be replayed during the jury deliberations. 769 F.2d at 600–01. We reasoned that it was prejudicial because it unduly emphasized particular testimony. *Id.* at 601. The replay served the functional equivalent of allowing a live witness to testify a second time in the jury room. *Id.* at 600 & 601 n. 1. Finally, the district court's failure to replay the entire videotape, instead of abridged versions, put undue emphasis on that portion of the testimony. *Id.* at 601.

However, *Binder* is distinguishable from the present case. The focus in that case was on the "live" nature of the videotaped evidence and the undue emphasis that resulted from allowing the jury to view it during deliberations. *Cf., Nickell, supra*, affirming the trial court's decision allowing the jury to review written excerpts of trial testimony.

In *Brewer*, we held that the district court did not abuse its discretion in allowing the jury to use a magnifying glass to examine certain photographic evidence. *United States v. Brewer*, 783 F.2d 841, 843 (9th Cir.), *cert. denied*, 479 U.S. 831, 107 S.Ct. 118, 93 L.Ed.2d 64 (1986). Similarly, in this case, the jury was allowed to review evidence which had been presented at trial. The jury viewed Rincon in comparison to the surveillance photograph during trial because the surveillance photograph was placed on a stand near Rincon. Had Rincon chosen to introduce a photograph instead of presenting himself to the jury, the jury's review of the two photographs would clearly have been appropriate. In substance, Rincon substituted himself for a photograph. In order for the jury to review the evidence regarding the identity of the robber, it had to look at Rincon as well as the surveillance photograph. Thus, the jury was merely reviewing evidence already presented during the trial and the district court did not abuse its discretion in allowing the jury to examine Rincon next to the surveillance photograph.

The district judge was careful to limit the display to evidence presented at trial. He did not comply with the jury's request to view Rincon next to the surveillance photograph wearing sunglasses because he properly concluded that the sunglasses were extrinsic evidence. Therefore, because the district court is generally given wide latitude in allowing the jury to review evidence during its deliberations, we hold that the district court did not err in allowing this display during jury deliberations.

## CONCLUSION

Because the district court neither abused its discretion in excluding the eyewitness expert testimony nor in allowing the jury to review Rincon next to the surveillance photograph, we AFFIRM.