**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. BRIGIDO LUNA ZAPIEN, *Defendant-Appellant.* | No. 14-10224 D.C. No. 4:12-cr-00583-DCB-CRP-4 OPINION |

Appeal from the United States District Court
for the District of Arizona
David C. Bury, Senior District Judge, Presiding

Argued and Submitted May 9, 2016
San Francisco, California

Filed July 3, 2017

Before: M. Margaret McKeown and Michelle T. Friedland,
Circuit Judges, and Richard F. Boulware,[*] District Judge.

Per Curiam Opinion

---

[*] The Honorable Richard F. Boulware, United States District Judge
for the District of Nevada, sitting by designation.

## SUMMARY**

### Criminal Law

The panel affirmed the district court's denial of the defendant's motion to suppress his confession volunteered after he was arrested for alleged involvement in an illegal drug sale, Mirandized, and accused by DEA agents of being a drug dealer.

The panel disagreed with the defendant's argument that the agents' questioning following the invocation of his right to counsel constituted interrogation, and concluded that the questioning was covered by the booking exception, which is an exemption from *Miranda*'s coverage for questions posed to secure the biographical data necessary to complete booking or pretrial services. The panel agreed with the district court that the questions asked of the defendant were biographical questions and were not reasonably likely to elicit an incriminating response.

### COUNSEL

Francisco León (argued), Law Office of Francisco León, Tucson, Arizona, for Defendant-Appellant.

Christina Cabanillas (argued), Assistant United States Attorney; Robert L. Miskell, Appellate Chief; John S.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Leonardo, United States Attorney; United States Attorney's Office, Tucson, Arizona, for Plaintiff-Appellee.

## OPINION

PER CURIAM:

Brigido Luna Zapien was arrested for his alleged involvement in an illegal drug sale. After being Mirandized, Luna Zapien invoked his right to counsel after Drug Enforcement Administration (DEA) agents accused him of being a drug dealer. Following his invocation, the agents began asking him biographical questions. Luna Zapien then said he wanted to provide further information. Again, the agents advised him of his rights under *Miranda*, but he explicitly said he wanted to talk without counsel and then told the agents that he had been involved in drug trafficking. The district court concluded that Luna Zapien's incriminating statements were admissible because the biographical questions did not constitute interrogation. We agree and affirm the district court's denial of the motion to suppress Luna Zapien's confession.

## I. BACKGROUND

The DEA's investigation of Luna Zapien began in January 2012 with an informant's tip that Luna Zapien was a drug dealer. Over the course of a few days, agents observed Luna Zapien interacting with a confidential informant. These interactions culminated in a drug transaction involving Luna Zapien. After this transaction, on February 10, 2012 at approximately 7:30pm, Luna Zapien was stopped while driving his truck by Sahuarita Police Department (SPD) Officer Carl Navarette. Luna Zapien was detained for twenty to thirty minutes at the location where

his vehicle had been stopped, and then Officer Navarrete arrested Luna Zapien and transported him to the SPD station.

Navarette took Luna Zapien to a secluded hallway behind the holding cells, but did not place him in a holding cell. Subsequently, DEA Agent Jerome Souza, DEA Task Force Officer Mark Ramirez, and DEA Special Agent Erika Dorado approached Luna Zapien to interview him. Luna Zapien had been detained at the SPD station for less than one hour before this interview began. The agents questioned Luna Zapien in the hallway area, where there were tables and chairs available. Luna Zapien was seated and was not handcuffed during the interview. As Luna Zapien did not speak English, Officer Ramirez, a Spanish speaker, initiated the questioning in Spanish, and he took questions from the agents and translated them into Spanish.

Before the questioning began, Officer Ramirez read Luna Zapien his *Miranda* rights in Spanish from a plastic wallet card. Luna Zapien stated that he understood his rights and was willing to speak to the agents without an attorney present. Officer Ramirez then asked him about his involvement in drug trafficking. Luna Zapien stated he had never been involved in the sale or purchase of drugs, at which point Officer Ramirez told Luna Zapien that Ramirez had evidence of Luna Zapien's involvement in drug trafficking. Luna Zapien then explicitly invoked his right to counsel. All questioning about drug trafficking stopped immediately. This occurred approximately five minutes after the interview had begun.

After Luna Zapien invoked his right to counsel, Officer Ramirez began asking Luna Zapien for certain biographical information, such as Luna Zapien's name, birth date, and residence, and the names of his wife, parents, and children. It is unclear whether Ramirez told Luna Zapien that he had

to answer the biographical questions or Ramirez simply requested that he answer these questions. Officer Ramirez did tell Luna Zapien that he was not going to ask anything "about the case, about the evidence," but that he needed the information to "fill out the form"—a DEA Form 202.

At some point after providing answers to Officer Ramirez's questions concerning biographical information, Luna Zapien told the officers that he wanted to give a statement regarding drug trafficking. The agents immediately reminded Luna Zapien of his constitutional rights and told him they did not want to ask any questions because of his earlier request for an attorney. Luna Zapien said that he understood those rights, he wanted to waive them, and he wished "to speak to [the agents] without the presence of an attorney." It was only after this exchange that the agents asked about his participation in drug activity and that he admitted selling drugs. Luna Zapien told the officers that he had been involved "in making phone calls and meeting with an unknown [H]ispanic male, and that he did sell narcotics."

On March 7, 2012, Luna Zapien was indicted by a grand jury with (1) conspiracy to possess with intent to distribute approximately 450 grams of methamphetamine, in violation of 21 U.S.C. § 846; and (2) possession with intent to distribute approximately 450 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). On March 23, 2012, he was arraigned and pleaded not guilty to the indictment.

Before trial, Luna Zapien filed a motion to suppress the statements he made to the DEA agents after his arrest, arguing in part that the statements were obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966) because he had asserted his right to counsel.

The magistrate judge conducted an evidentiary hearing on Luna Zapien's motion to suppress. The government presented three witnesses at the hearing: DEA Agent Souza, DEA Task Force Officer Ramirez, and SPD Officer Navarrete. Officer Ramirez testified that he regularly asks DEA Form 202 questions to gather emergency contact information to provide to the Marshals.

In his Report and Recommendation (R&R), the magistrate judge determined that (1) Luna Zapien was properly advised of his *Miranda* rights; (2) Luna Zapien initially invoked his right to counsel, after which all questioning concerning drug trafficking ceased; (3) Officer Ramirez's questions regarding biographical information did not constitute interrogation for purposes of *Miranda*; (4) after the biographical questions, Luna Zapien reinitiated conversation about his drug trafficking and knowingly and voluntarily waived his right to counsel; and (5) there was no evidence of coercion. The magistrate judge therefore recommended that Luna Zapien's incriminating statements were admissible and that his motion to suppress be denied. The district court overruled Luna Zapien's objections to the R&R, adopted it in its entirety, and denied Luna Zapien's motion to suppress. In adopting the R&R, the district court adopted the magistrate judge's finding that the agents had testified credibly.

After a five-day jury trial, the jury returned a verdict of guilty as to Luna Zapien on both counts. He was sentenced to concurrent terms of imprisonment of ten years and supervised release terms of five years for each count.

On appeal, Luna Zapien challenges the district court's denial of the motion to suppress and his sentence. We address the suppression issue in this opinion and consider the

sentencing issue in a separate memorandum disposition filed concurrently.

## II. DISCUSSION

Luna Zapien argues that the questioning following the invocation of his right to counsel constituted interrogation. We disagree. We conclude that the questioning was covered by the booking exception.

### A. Standard of Review

"We review the district court's denial of [a] motion to suppress de novo and the underlying factual findings for clear error." *United States v. Rodriguez-Preciado*, 399 F.3d 1118, 1125, *amended by* 416 F.3d 939 (9th Cir. 2005). We also review de novo whether a defendant was subject to "interrogation" within the meaning of *Miranda*. *United States v. Foster*, 227 F.3d 1096, 1102 (9th Cir. 2000).

### B. Custodial Interrogation and the Booking Exception

"Pursuant to *Miranda v. Arizona*, a person has a right to the assistance of counsel during custodial interrogations." *Id.* (citation omitted). Following *Miranda*, the Supreme Court explained in *Edwards v. Arizona* that "when an accused has invoked his right to have counsel present during custodial interrogation," he must not be "subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 U.S. 477, 484–85 (1981). "The term 'interrogation' means 'any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to

elicit an incriminating response.'" *United States v. Washington*, 462 F.3d 1124, 1132 (9th Cir. 2006) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)).

Importantly, the "routine gathering of background biographical information, such as identity, age, and address, usually does not constitute interrogation." *Id.*; *see also Foster*, 227 F.3d at 1103; *United States v. Booth*, 669 F.2d 1231, 1238 (9th Cir. 1981). What is called the "booking exception," then, is in fact an "exemp[tion] 'from *Miranda*'s coverage'" for questions posed "'to secure the biographical data necessary to complete booking or pretrial services.'" *United States v. Williams*, 842 F.3d 1143, 1147 (9th Cir. 2016) (quoting *Pennsylvania v. Muniz*, 496 U.S. 582, 601 (1990) (plurality opinion)).

Nonetheless, we have "recognize[d] the potential for abuse by law enforcement officers who might, under the guise of seeking 'objective' or 'neutral' information, deliberately elicit an incriminating statement from a suspect." *Booth*, 669 F.2d at 1238. To account for this risk, we apply an "objective" test to determine whether the questioning constituted interrogation. *Washington*, 462 F.3d at 1132. Seemingly routine biographical questions can constitute interrogation if, in light of all the circumstances, the officers should have known that their words or actions were reasonably likely to elicit an incriminating response. *Booth*, 669 F.2d at 1238. In making this determination, "the focus is upon the defendant's perceptions." *United States v. Moreno-Flores*, 33 F.3d 1164, 1169 (9th Cir. 1994).

Once the import of the booking exception is properly understood as part and parcel of the question whether there has been "interrogation," it becomes clear that the determinative issue is whether the officer "should have known that his questions were reasonably likely to elicit an

incriminating response." *United States v. Poole*, 794 F.2d 462, 466, *amended on denial of reh'g by* 806 F.2d 853 (9th Cir. 1986). Thus, courts must determine whether "the questions are reasonably likely to elicit an incriminating response in a particular situation." *United States v. Mata-Abundiz*, 717 F.2d 1277, 1280 (9th Cir. 1983). This analysis includes consideration of both the questions and the context. *See United States v. Pacheco-Lopez*, 531 F.3d 420, 424–25 (6th Cir. 2008) ("The location, the nature of the questioning, and the failure to take notes or document the defendant's identity also support our conclusion that the booking exception is not applicable in this case."). In undertaking this analysis, courts have looked to a range of particularized circumstances. *See, e.g.*, *Mata-Abundiz*, 717 F.2d at 1280 (whether the government agency conducting the questioning ordinarily booked suspects); *United States v. Disla*, 805 F.2d 1340, 1347 (9th Cir. 1986) (whether officers knew that the questions were related to an element of the crime); *United States v. Salgado*, 292 F.3d 1169, 1174 (9th Cir. 2002) (whether a "true booking" had already occurred and the agency therefore already had access to the information); *Foster*, 227 F.3d at 1103 (whether the questions were separated in time and place from the incriminating statements); *Poole*, 794 F.2d at 466–67 & n.3 (whether the questioning had an "investigatory purpose" or was conducted as part of "clerical processing" when a defendant is received into jail).[1]

---

[1] We need not address the question of who has the burden of establishing the applicability of the booking exception as our decision would be the same whether Luna Zapien or the government had the burden.

### C.  The Booking Exception Applies to Questioning of Luna Zapien

Contrary to Luna Zapien's argument, the booking exception can apply to questioning even after a defendant has invoked his right to counsel. *Foster*, 227 F.3d at 1103; *Clayton v. Gibson*, 199 F.3d 1162, 1172 (10th Cir. 1999). The district court found that the questions asked of Luna Zapien were biographical questions and concluded that they were not reasonably likely to elicit an incriminating response.  We agree.

In our de novo review of the record, we note that there is no evidence that the agents made any "reference whatsoever to the offense for which [he] had been arrested" or that "the requested information [was] so clearly and directly linked to the suspected offense." *United States v. Reyes*, 225 F.3d 71, 77 (1st Cir. 2000).  No factual findings by the district court or evidence suggest that the agents "played upon" Luna Zapien's "weaknesses" or "knew that [he] 'was unusually disoriented or upset at the time.'" *Foster*, 227 F.3d at 1104 (quoting *Innis*, 446 U.S. at 303).  And no findings indicate that Luna Zapien "was particularly susceptible to [the] line of questioning" or that the agents "used the questions as 'mere pretext' to elicit incriminating information." *United States v. Clark*, 982 F.2d 965, 968 (6th Cir. 1993).  In all, the record does not show that the agents should have known that their questions were reasonably likely to elicit Luna Zapien's confession.[2]

---

[2] We do note that the DEA form in this case indicated that Luna Zapien was illegally in the country.  We have no indication or finding, however, about when agents learned this information—whether this was during or after the interview.  Consequently, we have no basis for finding

Both the questions themselves and the context in which they were asked support the district court's decision. The biographical questions had no relation to Luna Zapien's crime. *See Mata-Abundiz*, 717 F.2d at 1280 ("The relationship of the question asked to the crime suspected is highly relevant."). And by crediting the agents' testimony, the district court also confirmed that the questions were asked in the context of booking procedures. That testimony included Officer Ramirez's explanation that he regularly asks DEA Form 202 questions to gather emergency contact information to provide to the Marshals. This explanation provides both the officer's subjective intent and an objective reason for asking the questions. From an objective point of view, the biographical questions did not amount to interrogation because they were not reasonably likely to elicit Luna Zapien's incriminating response. *See Booth*, 669 F.2d at 1238.

We affirm the district court's invocation of the booking exception and its denial of the motion to suppress Luna Zapien's voluntary confession.

**AFFIRMED.**

---

that Luna Zapien's immigration status was used or leveraged by the agents when questioning him.