**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-2917 |
| *Plaintiff - Appellant*, | D.C. No. 2:20-cr-00095-ART-BNW-1 |
| v. | |
| LARRY SENG IN, | OPINION |
| *Defendant - Appellee*. | |

Appeal from the United States District Court
for the District of Nevada
Anne R. Traum, District Judge, Presiding

Argued and Submitted September 9, 2024
San Francisco, California

Filed December 30, 2024

Before: Ronald M. Gould and Patrick J. Bumatay, Circuit
Judges, and J. Michael Seabright, District Judge.[*]

Opinion by Judge Gould

---

[*] The Honorable J. Michael Seabright, United States District Judge for
the District of Hawaii, sitting by designation.

# SUMMARY[**]

## Criminal Law

The panel reversed the district court's order granting Larry Seng In's motion to suppress a gun found in his car during a traffic stop, and remanded for trial.

In argued that the officers' actions, in particular their decision to handcuff him, escalated a valid *Terry* stop into an unlawful *de facto* arrest because the officers handcuffed him before they had probable cause to believe that he was prohibited from possessing the gun.

Considering the totality of the circumstances, the panel held that the traffic stop did not turn into a *de facto* arrest. The officers had a sufficient and reasonable basis to fear for their safety, justifying their decision to handcuff In so that their safety was assured during their investigation.

## COUNSEL

Peter H. Walkingshaw (argued), Assistant United States Attorney; Robert L. Ellman, Appellate Chief; Jason M. Frierson, United States Attorney; United States Department of Justice, Office of the United States Attorney; Reno, Nevada; Daniel D. Hollingsworth and Adam M. Flake, Assistant United States Attorneys, United States Department

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

of Justice, Office of the United States Attorney; Las Vegas, Nevada; for Plaintiff-Appellant.

Lauren Torre (argued), Assistant Federal Public Defender; Rene L. Valladares, Federal Public Defender; Federal Public Defender for the District of Nevada, Las Vegas, Nevada; for Defendant-Appellee.

## OPINION

GOULD, Circuit Judge:

Larry Seng In ("In") was charged in a federal indictment with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) after a gun was found in his car during a traffic stop. In moved to suppress the gun in district court, contending that it was obtained as a result of an unlawful *de facto* arrest. In did not challenge the officers' initial traffic stop as an unlawful *Terry* stop. Instead, In argued that the officers' actions, in particular their decision to handcuff him, escalated a valid *Terry* stop into an unlawful *de facto* arrest because the officers handcuffed him before they had probable cause to believe that he was prohibited from possessing the gun.

The district court referred the motion to a magistrate judge. The magistrate judge held an evidentiary hearing and prepared a report and recommendation to the district court, concluding that In was not subject to a *de facto* arrest without probable cause because the intrusive means of effecting the *Terry* stop, including handcuffing, were justified under the circumstances. The district court rejected the magistrate judge's recommendation and granted In's motion to

suppress, holding that the gun was obtained as a result of an unlawful *de facto* arrest without probable cause. The United States ("the Government") moved for reconsideration, and the district court denied the motion. The Government appealed the district court's order granting In's suppression motion, and we now must decide whether the traffic stop became a *de facto* arrest. We have jurisdiction under 18 U.S.C. § 3731. We hold that the traffic stop did not turn into a *de facto* arrest, and we reverse the district court.

## BACKGROUND

On the evening of March 4, 2020, Las Vegas Metropolitan Police Department ("LVMPD") Enforcement Bike Squad Officers Haley Andersen, Daniel Diaz, and Timothy Nye engaged in a traffic stop on bicycle near Las Vegas Boulevard ("the Strip") in Las Vegas, Nevada. Officers Andersen, Diaz, and Nye saw a car with a taillight out and a California license plate parked in a red-curb no-parking zone about fifty feet from the Strip. In was seated in the driver's seat of the car. Officer Diaz walked up to the driver's-side window, requesting In's driver's license, registration, and insurance. The encounter was recorded on body cam video from Officer Diaz and Officer Andersen.

While Officer Diaz spoke with In, Officer Andersen shone her flashlight into the interior of In's car and discovered a Glock on the backseat passenger-side floor of the car. Officer Andersen stated to the other officers that there was a Glock in the backseat, and she told Officer Diaz to tell In to keep his hands up. Officer Diaz ordered In to get out of the car. In started collecting his documents before Officer Diaz told him to stop reaching for anything in the car and to put his hands up. In set the papers down and raised his hands. Officer Diaz then opened the car door, put his

hand on In's wrist, unbuckled In's seatbelt, and pulled In out of the car.

After In was pulled out of the car, Officer Diaz held In against the closed backdoor of the car while holding In's hands behind his back. Officer Diaz asked In, "Do you have any weapons on you?" and In said, "No." Officer Andersen next asked, "There any weapons in the car?" and In said, "No." Officer Diaz then began patting down In. While In was being patted down, Officer Andersen asked, "Have you ever been arrested," and In answered, "Yeah, in California." Officer Andersen then asked, "For what?" and In responded "For marijuana," to which Officer Andersen said, "What else?" and In responded, "That's It."

Officer Diaz then began handcuffing In. While In was being handcuffed, Officer Andersen asked: "You have no weapons in your car?" to which In responded "No." The handcuffs being used by Officer Diaz made a ratcheting sound, indicating they were being tightened, as Officer Andersen asked "Why is there a Glock back there? You don't know now?" In said he had left the shooting range, and Officer Diaz responded, "Did you? In some sandals? Do we look new to you?" Officer Andersen told In that he had to answer honestly or he would be in a lot of trouble.

Officer Andersen asked In, "Are you a felon?" to which In responded, "No." Officer Andersen then asked In if the gun belonged to him, and he responded "Yeah." Officer Andersen asked, "Why are you so nervous right now?" to which In responded, "Because I didn't do nothing except sit in my car." Officer Andersen explained that the officers had reasonable suspicion to stop In because he was parked in a red zone for an unreasonable amount of time and had a taillight out. Officer Diaz then walked In, handcuffed, to the

curb. Officer Andersen asked, "You never been arrested out here?" and In responded, "No, I've never got in trouble in Las Vegas, I never come to Las Vegas."

Officer Andersen then called LVMPD's records office from her cell phone to determine whether In had warrants or convictions in Nevada. Meanwhile, Officer Diaz read In his *Miranda* rights. In asked if he was getting arrested, and Officer Diaz responded, "No, I, we—we like to read you your rights, that way you understand before we go ahead and talk to you." Officer Diaz asked In what he was arrested for in California, and In responded that he had a grand theft on a person, but that he thought it would no longer be on his record because it had been more than seven years.

While In stood handcuffed on the sidewalk, Officer Diaz asked if they could search the car, and In said "Yeah." However, when Officer Diaz told Officer Nye that In gave them consent to search the car, Officer Nye stopped Officer Diaz from searching the car, telling Officer Diaz: "Whoa, whoa, whoa, let's hang on to that, for a second, even if we have consent. He's in cuffs, right?" Officer Diaz responded, "Yeah, but you still have a firearm, that's still an officer safety thing," but Officer Nye shook his head no and rhetorically asked Officer Diaz, "Is he in the car right now? Before we let him go, we can do that, but let's find out if there's anything that she," pointing to Officer Andersen, "finds out before we go in. You hear what I'm saying?"

After several minutes, a fourth officer, Sergeant Leung, arrived in a police car. Officer Andersen had been told by LVMPD's records office that In did not have a criminal history or active warrants in Nevada. Officer Andersen said to Sergeant Leung, "I'm gonna Triple I him," referring to a non-routine process used to obtain interstate history records.

Sergeant Leung asked if In was prohibited from carrying a firearm, and Officer Andersen said, "that why—I'm Triple-I'ing him, I don't know yet." Officer Andersen later testified that she believed running the Triple I check was necessary because In said that he had been arrested in California and was not truthful at points during the encounter.

Using the Triple I check, the officers confirmed that In had prior felony convictions in California. The officers then obtained a telephonic search warrant from a state court judge to search In's car and recovered the gun.

## DISCUSSION

### A. Standard of Review

We review *de novo* a district court's decision on a motion to suppress, and we review the underlying factual findings for clear error. *United States v. Zapien*, 861 F.3d 971, 974 (9th Cir. 2017); *United States v. Crawford*, 372 F.3d 1048, 1053 (9th Cir. 2004) (*en banc*). "Whether a seizure exceeds the bounds of an investigatory stop and becomes a *de facto* arrest is reviewed *de novo*." *United States v. Edwards*, 761 F.3d 977, 981 (9th Cir. 2014) (cleaned up) (citing *United States v. Miles*, 247 F.3d 1009, 1012 (9th Cir. 2001)).

### B. In Was Not Subject to an Arrest Requiring Probable Cause

The Government asked us to reverse the district court's order granting In's suppression motion because the officers' use of handcuffs during the traffic stop was reasonable under the circumstances, and did not escalate the encounter from a valid investigative stop into a *de facto* arrest. We agree.

The Fourth Amendment to the United States Constitution protects individuals from "unreasonable

searches and seizures" by the government.   U.S. Const. amend. IV.  The Fourth Amendment permits "two categories of police seizures": (1) *Terry* stops, *i.e.*, "brief, investigative stop[s]" when police officers "have reasonable suspicion that the person apprehended is committing or has committed a criminal offense"; and (2) "full-scale arrests," which require probable cause at the time of arrest that the person being arrested has committed a crime.   *Reynaga Hernandez v. Skinner*, 969 F.3d 930, 937–38 (9th Cir. 2020) (internal quotation marks omitted).   "During a *Terry* stop motivated by reasonable suspicion, the officer may ask investigatory questions, but the scope of the detention must be carefully tailored to its underlying justification."   *Id.* at 938 (internal quotation marks omitted).

"[A]t some point," an investigative stop "can no longer be justified as an investigative stop," and turns into an unconstitutional *de facto* arrest.   *United States v. Sharpe*, 470 U.S. 675, 685 (1985).   To determine whether a *Terry* stop becomes a *de facto* arrest, we consider the totality of the circumstances, including the "severity of the intrusion, the aggressiveness of the officer's actions, and the reasonableness of the officer's methods under the circumstances."   *Reynaga Hernandez*, 969 F.3d at 940 (citing *Washington v. Lambert*, 98 F.3d 1181, 1188–89 (9th Cir. 1996)).   When considering the reasonableness of the officer's methods under the circumstances, we consider whether the officer had "sufficient basis to fear for his [or her] safety to warrant the intrusiveness of the action taken." *United States v. Edwards*, 761 F.3d 977, 981 (9th Cir. 2014). This "inquiry is undertaken . . . from the perspective of law enforcement, while bearing in mind that the purpose of a *Terry* stop is to allow the officer to pursue his investigation

without fear of violence." *Id.* (internal quotation marks omitted).

The use of "especially intrusive means" of effecting *Terry* stops has been held permissible in certain circumstances, including:

> (1) where the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight; (2) where the police have information that the suspect is currently armed; (3) where the stop closely follows a violent crime; and (4) where the police have information that a crime that may involve violence is about to occur.

*Reynaga Hernandez*, 969 F.3d at 940–941 (quoting *Washington*, 98 F.3d at 1189 (footnotes omitted)). "Handcuffing as a means of detaining an individual does not automatically escalate a stop into an arrest, but it substantially aggravates the intrusiveness of an otherwise routine investigatory detention and is not part of a typical *Terry* stop." *Id.* at 941 (internal quotation marks omitted).

In this case, the officers' decision to handcuff In made the traffic stop more intrusive than a typical *Terry* stop, but the use of handcuffs was reasonable under the circumstances and did not convert the stop into an arrest. Officer Andersen saw an unsecured gun on the floor of the backseat of In's car seconds into the traffic stop, and when Officer Andersen asked In whether he had a gun in his car after In was ordered out of his car, In lied and said "No." While In was physically cooperative with the officers up until this point, he became uncooperative when he answered untruthfully the officer's

question about having a gun in his car, and his response reasonably raised the possibility that the stop could turn extremely dangerous due to the information gap that existed between the officers and In and the unsecured gun on the floor of the backseat of the car. *See Washington*, 98 F.3d at 1189. The safety risks posed by the stop were amplified because the stop occurred about fifty feet from the Strip, a densely populated tourist area, and the officers were patrolling on bicycles without the protection of a patrol car if the traffic stop turned dangerous.

Because the officers were patrolling on bicycles, they could not place In inside a patrol car while conducting their investigation. If the officers had not handcuffed In, they would have had to rely on their ability to physically overpower In if he attempted to reach for the gun that was visible and loose on the floor of the backseat of the car. Although In did not actually reach for the exposed gun, the question is whether officers had a sufficient basis to fear for their safety to warrant the intrusiveness of the actions taken. *Edwards*, 761 F.3d at 981. Considering the totality of the circumstances, we hold that the officers had a sufficient and reasonable basis to fear for their safety, justifying their decision to handcuff In so that their safety was assured during their investigation. The officers had good reason to handcuff In to prevent him from being able to access the unsecured gun on the floor of the backseat. The officers were eliminating the possibility that In could gain access to the unsecured gun. That conduct properly protected both the officers and the general public. And this is true even though Nevada is an open carry state. *See* Nev. Const. art. I, § 11. Because the officers' conduct was reasonable under the circumstances, the *Terry* stop did not escalate into a *de facto* arrest without probable cause.

**CONCLUSION**

In was not subjected to an arrest requiring probable cause. We reverse the district court's order granting In's suppression motion and remand the case for trial.

**REVERSED AND REMANDED.**